UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

SHAWN ASSELIN, )
)
Plaintiff )
)
v. ) 2:12-cv-00036-GZS
)
TREVOR PURINGTON, et al., )
)
Defendants )

**RECOMMENDED DECISION**
**RE: MOTION FOR PARTIAL DISMISSAL**
**(ECF No. 17)**

The nine defendants in this prisoner civil rights action, all members of the Cumberland County Sheriff's Department, have moved for partial dismissal of Asselin's complaint. If their motion were granted in its entirety, the only remaining claim would be an excessive force claim involving defendant Purington's use of a Taser against Asselin while Asselin was an inmate at the Cumberland County Jail. Asselin did not file a timely response to the motion. However, approximately ten days after his response was due, Asselin filed a document entitled "Memorandum in Opposition to Defendants' Motion for Summary Judgment." (ECF No. 19.) That pleading addresses none of the issues raised in the motion for partial dismissal. It is devoted entirely to the issue involving the Taser used by Purington, a subject not addressed in Defendants' Motion for Partial Dismissal. I now recommend that the Court grant the Motion in part, dismissing all claims and defendants addressed by the Motion, except for the First Amendment retaliation claim against Defendants Pickering and LeBlanc, for the reasons set forth herein.

## COMPLAINT ALLEGATIONS

Asselin's pleadings contain the following factual allegations arising from events during his incarceration at the Cumberland County Jail. (Compl. ¶ 3, ECF No. 1.) Trevor Purington, Brian LeBlanc, Chris Bisson, and Seth Moore are correctional officers at the jail. (Id. ¶ 4.) Kevin Joyce is the Cumberland County Sheriff and is responsible for the supervision and discipline of his employees and for reviewing all administrative appeals. (Id. ¶ 5.) Steve Butts and Wayne Pike are captains at the jail and they are responsible for approving all disciplinary recommendations. (Id. ¶ 6.) George Panenka is a lieutenant at the jail and he is responsible for conducting disciplinary proceedings. (Id. ¶ 7.) Josh Pickering is a sergeant at the jail and is responsible for approving all decisions made by correctional officers. (Id. ¶ 8.) In his amended complaint, Asselin describes the defendants somewhat differently, and includes an explanation that he is suing the defendants "individually, in their official capacities." (Am. Compl. ¶¶ 4-6, ECF No. 13.)[1]

On December 29, 2011, Asselin was attacked by another inmate at the county jail. (Id. ¶ 7.) Asselin used a stack of chairs as a shield to keep the other inmate at bay. (Id. ¶ 8.) Asselin retreated from the attacker, pulling the chairs with him for protection. (Id. ¶ 9.) Officer Purington was behind the other inmate and watched as the attack on Asselin unfolded. (Id. ¶ 10.) Purington eventually drew his jail issued Taser and yelled, "Stop, knock it off," causing the attacker to comply and back away from Asselin. (Id. ¶ 12.) Asselin then let go of the stack of chairs and took another step backwards. (Id. ¶ 13.) Purington, without warning, then fired his Taser at Asselin who was unarmed and not physically resisting. (Id. ¶ 14.) Asselin was hit with two prongs in a five second cycle of 50,000 volts of electricity. (Id. ¶ 15.) Asselin fell to the

[1] All subsequent allegations are drawn from the amended pleading.

ground and suffered a concussion when his head struck the concrete floor. (Id. ¶ 17.) Asselin

also received injuries to his back, chest, neck, jaw, and right elbow. (Id. ¶ 18.)

The medical personnel came to the scene and removed the prongs from Asselin. (Id. ¶

19.) Medical cleared Asselin without any treatment or medical documentation and he was

placed in administrative segregation. (Id. ¶ 20.) Six hours later medical personnel visited him

and gave him some ibuprofen. (Id. ¶ 21.)

Asselin was served with disciplinary charges for fighting and placed in administrative

segregation. (Id. ¶ 22.) That same evening, at his preliminary hearing before a disciplinary

board, Asselin requested that three witnesses be called in his defense because those inmate

witnesses had heard the attacker making threats against Asselin that day in front of Officer

Purington. These three inmates also witnessed the incident that led to Purington's use of the

Taser. (Id. ¶ 23.) On January 4, 2012, Asselin received a disciplinary hearing in front of

Lieutenant Panenka and Officers Bisson and LeBlanc. (Id. ¶ 24.) The officers called only one of

the inmate witnesses. (Id. ¶ 25.) After the hearing, Asselin received a written document signed

by the three disciplinary board officers in which he was found guilty based on Officer

Purington's report and a video. (Id. ¶ 26.) Asselin lost five days good time as a punishment.

(Id. ¶ 27.) The officer's report, prepared by Purington, does not say that Asselin assaulted the

other inmate. Nor does the video show Asselin committing any assault. (Id. ¶ 28.) Asselin filed

an appeal of the disciplinary decision with Sheriff Joyce. (Id. ¶ 29.) The Sheriff denied the

appeal without explanation. (Id. ¶ 30.)

On January 5, 2012, Asselin was again placed in administrative segregation, this time by

LeBlanc and Pickering, because Asselin announced to them that he was going to petition the

courts about the above-described incident. (Id. ¶ 31.) LeBlanc and Pickering acted with

improper intent to retaliate against Asselin when they placed him in administrative segregation. (Id. ¶ 32.) LeBlanc told Asselin that since he liked to file grievances and lawsuits, he was going to be removed to administrative segregation if he didn't stop talking about it. (Id. ¶ 33-2.) Leblanc then had him removed and placed in administrative segregation by Pickering. (Id. ¶ 33-3.) LeBlanc then wrote an incident report falsely claiming that Asselin had threatened his life, along with other charges. (Id. ¶ 33-4.) On January 11, 2012, at another disciplinary hearing, Lieutenant Panenka and Officers Bisson and Moore found Asselin guilty of a charge of disobeying a direct order. (Id. ¶ 33-5.) As a result of LeBlanc's false statements, Asselin spent 3.5 days in administrative segregation and lost five days of good time. (Id. ¶ 33-6.) He was also removed from prison programs. (Id. ¶ 33-7.) Although the allegation is not the model of clarity, it appears that Asselin is alleging that Pickering also filed a false report of misconduct. (Id. ¶ 33-8.) Captain Pike and Sheriff Joyce approved the disciplinary board's recommendation. (Id. ¶ 35.) Asselin filed an appeal claiming a violation of the First Amendment. (Id. ¶ 36.) Captain Butts denied the appeal. (Id. ¶ 37.)

Asselin's Taser-related claims against Officer Purington consist of an Eighth Amendment claim and a state law assault claim. (Id. ¶¶ 38-39.) Asselin alleges that Purington failed to act reasonably and demonstrated deliberate indifference to his safety. (Id. ¶ 40.) Asselin also alleges that Sheriff Joyce knew that Purington demonstrated a pattern of physical abuse toward inmates and that the Sheriff was, in essence, deliberately indifferent to the harm presented by Purington. (Id. ¶ 41.) This claim might also be construed as a claim of failure to protect. (Id.) Asselin also claims that Lieutenant Panenka and Officers Bisson and Leblanc committed a due process violation when they refused to call the two additional inmate witnesses and that Captain Pike and Sheriff Joyce did the same when they upheld the disciplinary decision. (Id. ¶ 42). In

addition, Asselin alleges retaliation from Pickering and LeBlanc for his exercise of the right to petition in redress of grievances. (Id. ¶ 43.) Finally, Asselin contends that Panenka, Bisson, and Moore deprived him of "liberty and amenity" and violated the First Amendment "by finding the plaintiff guilty of disobeying an order to stop talking." (Id. ¶ 44.)

According to Asselin, he has exhausted all administrative remedies. (Id. ¶ 45.)

**MOTION TO DISMISS STANDARDS**

When a district court has promulgated a local rule, such as Rule 7(b) of the District of Maine Local Rules—requiring a party to file a written objection to any motion—it is within the district court's discretion to dismiss an action based on a party's unexcused failure to respond to a dispositive motion. Nepsk, Inc. v. Town of Houlton, 283 F.3d 1, 7 (1st Cir. 2002); see also ITI Holdings, Inc. v. Odom, 468 F.3d 17 (1st Cir. 2006) (applying the holding of Nepsk to Rule 12(b)(6) motions). The only limitation on this discretion is that an order dismissing the case must "not clearly offend equity" or be inconsistent with the Federal Rules of Civil Procedure. ITI Holdings, 468 F.3d at 19 (quoting Nepsk, 283 F.3d at 7).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." When deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008). To properly allege a claim in federal court, it is not enough merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009). Because Collins is a pro se litigant, his complaint is subjected to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972).

## DISCUSSION

Asselin failed to file a timely response to Defendants' Motion. When he eventually filed a response, that response was meaningless in respect to the issues raised by Defendants' Motion. For that reason alone the motion could be granted. Nevertheless, in deference to Asselin's pro se status and the serious issues he raises in his complaint, I have independently considered each of the issues raised by Defendants in their motion. Counsel carefully parsed the complaint and in large measure the motion should be granted for the reasons he has put forth in his memorandum.

**Claims Against Sheriff Joyce Related to Officer Purington's Use of the Taser**

The claims against Sheriff Joyce should be dismissed. Other than Joyce's role in the disciplinary appeals, discussed separately below, the sole allegation against him appears in the claim for relief section where it is alleged that he violated the Eighth Amendment by failing to take action to "curb the physical abuse of prisoners." (Am. Compl. at 11, "Wherefore" § A.2.) This is precisely the type of conclusory statement, devoid of factual content, that is rejected under Iqbal. These cryptic statements are nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and are not entitled to the presumption of truth. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Moreover, these allegations do not meet the standard for supervisory liability under the Supreme Court's recent decisions. See id. at 677 (rejecting the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the

Constitution").  For both of these reasons, to the extent Asselin intended to assert an Eighth

Amendment claim against Sheriff Joyce, I recommend dismissal of the claim.

**Claims against Officer Purington**

As stated initially, Defendants' Motion does not request the dismissal of Asselin's core

claim related to Purington's use of the Taser against him.  In addition to this claim, Asselin has

asserted that Purington failed to protect him from harm.  (Am. Compl. at 11, "Wherefore" §

A.1.)   "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other

prisoners."  Farmer v. Brennan, 511 U.S. 825, 833 (1994).  However, "[n]ot every injury

suffered by a prisoner at the hands of another results in constitutional liability on the part of

prison officials."  Burrell v. Hampshire County, 307 F.3d 1, 7-8 (1st Cir. 2002) (citing Farmer,

511 U.S. at 834).  To establish an Eighth Amendment violation, a plaintiff must show:  (1) that

the deprivation alleged was "objectively, sufficiently serious" and (2) "that prison officials

possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an

inmate's health or safety."  Id. at 8 (citing Farmer, 511 U.S. at 833).  There are no allegations of

what sort of risk of harm Asselin faced from the attacking inmate.  In any event, by Asselin's

own account, it was Purington who caused the other inmate to back off, effectively protecting

Asselin from harm from that particular source.  For this reason, any failure to protect claim

against Purington should be dismissed.

**Due Process Claims Related to Grievances and Disciplinary Hearings**

Sheriff Joyce, Lieutenant Panenka, Captains Butts and Pike, and Officers Bisson and

LeBlanc[2] are alleged to have violated Asselin's due process rights because of their various roles

in the disciplinary process.  (Am. Compl. ¶¶ 42, 44.)  Complaints about a corrections officer's

---

[2]      LeBlanc is also sued in connection with a First Amendment retaliation claim discussed in some detail
below.

decisions during the disciplinary process, without more, simply are not actionable under 42 U.S.C. § 1983. Defendants have cited a collection of cases, including cases that I have authored, rejecting just such claims.[3] (See Mot. at 6-7, ECF No. 17, at p. 7.) Additionally, as defendants carefully explain in their memorandum, Asselin has no constitutionally protected "liberty interest" in being released prior to the expiration of his sentence. (Id. at 7.) For both these reasons, the Section 1983 claims Asselin raises about the disciplinary board proceedings being violative of his constitutional rights are subject to dismissal.

**First Amendment Claims**

The most sensitive issue raised by Defendant's Motion for Partial Dismissal relates to the First Amendment retaliation claims against Lieutenant Panenka, Sergeant Pickering, and Officers Bisson, LeBlanc, and Moore. Panenka, Bisson, and Moore are sued only for their role in the disciplinary proceedings. LeBlanc allegedly provided the "false report" that served as the evidentiary basis for their decision. Sergeant Pickering allegedly placed Asselin in segregation "for stating he was going to petition the courts." (Am. Compl. ¶ 31.)

---

[3] As stated in my recommended decision on the motion to dismiss in Goguen v. Ross, No. 1:11-cv-00027-DBH:

> The mere denial of a grievance, without any direct involvement in the allegedly unconstitutional conduct, does not give rise to personal or supervisory liability under section 1983. Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (holding that the denial of administrative grievances and the failure to remedy the alleged retaliatory behavior does not give rise to liability absent evidence of direct participation, encouragement, authorization, or acquiescence in the alleged violation); Thomas v. Courtroom Deputy for Judge Ronan, Civ. No. 10-0536-PHX-RCB (EV), 2010 WL 2292947, *2, 2010 U.S. Dist. Lexis 64133, *5-6 (D. Ariz. June 8, 2010) ("[W]here a defendant's only involvement in allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy the alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983.") (collecting additional district court cases to that effect).

2011 U.S. Dist. Lexis 31069, *8-9.

There is no allegation that Panenka, Bisson, or Moore acted with any retaliatory intent and for the reasons discussed above Asselin cannot maintain a claim against them based solely on their role as decision makers in a disciplinary proceeding.  Without nonconclusory allegations that the disciplinary sanction arose from retaliatory intent, Asselin has not provided the missing causal connection that would support a First Amendment retaliation claim against Panenka, Bisson, and Moore.  See Hannon v. Beard, 645 F.3d 45, 50 (1st Cir. 2011) (citing O'Bryant v. Finch, 637 F.3d 1207, 1219-20 (11th Cir. 2011)).  In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court held that a "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decision makers that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983."  Id. at 648.  Asselin is barred from obtaining damages for the loss of good time or from suing the actual decision makers, Moore, Panenka, and Bisson, based on LeBlanc's deceit or bias.

The claims against Sergeant Pickering and Officer LeBlanc are of a different nature. Asselin alleges that Pickering placed him in administrative segregation based on false charges of misconduct made by LeBlanc and for saying he intended to petition the courts.  According to Asselin, LeBlanc falsely accused him of threatening and made other false charges to support the transfer to administrative segregation because, in LeBlanc's words, Asselin liked filing grievances and lawsuits and kept talking about it.  (Am. Compl. ¶ 33.)  Asselin also alleges that Sergeant Pickering was the person who placed him in segregation at that time and that Pickering had rank over LeBlanc, suggesting that Pickering was not simply following an order delivered by LeBlanc.  Assuming the truth of the allegations, such as they are, Asselin has alleged a sufficient claim of retaliation against Pickering and LeBlanc.

I recommend that the Court deny the motion as to LeBlanc's alleged retaliatory conduct because the allegations set forth the three prima facie elements of a prisoner retaliation claim: (1) the prisoner engaged in protected activity; (2) the state took an adverse action against him; and (3) there is a causal link between the former and the latter. Hannon, 645 F.3d at 49. By filing his own grievances and lawsuits, Asselin was plainly engaged in protected First Amendment activity. See Ferranti v. Moran, 618 F.2d 888, 892 (1st Cir. 1980). Based on the allegations in the complaint, which I must accept as true, Asselin has alleged a First Amendment retaliation claim against those officers responsible for placing him in segregation based on the alleged retaliatory motive. Defendants maintain that these officers are entitled to dismissal based on the assertion that jail administrators found Asselin guilty of the charge asserted by LeBlanc, but the cases cited by Defendants do not impose a pleading requirement and resolved in light of evidentiary development, either at summary judgment or following trial, not with summary dismissal. O'Bryant v. Finch, 637 F.3d 1207, 1215 (11th Cir. 2011); Hartsfield v. Nichols, 511 F.3d 826, 829 (8th Cir. 2008). Unless the Court intends to firmly apply the Nepsk rule based on Asselin's failure to respond to Defendants' arguments, I recommend that the portion of the motion seeking dismissal of the First Amendment retaliation claim against Pickering and LeBlanc be denied.

## CONCLUSION

Based on the foregoing, I recommend that the Court grant the motion in part, dismissing all claims that Defendants have addressed in their Motion for Partial Dismissal, except for the First Amendment retaliation claim against Defendants Pickering and LeBlanc. The excessive force claim against Purington was not the subject of the motion and, thus, that claim will remain in the case in any event.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

June 5, 2012                                          /s/ Margaret J. Kravchuk
                                                      U.S. Magistrate Judge